Slip Op. 21-42

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAO TA FOODS JOINT STOCK COMPANY ET AL., <br><br> Plaintiffs and Consolidated Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> AD HOC SHRIMP TRADE ACTION COMMITTEE, <br><br> Defendant-Intervenor and Consolidated Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Consol. Court No. 18-00205 |

## OPINION

[Sustaining the U.S. Department of Commerce's second remand results in the twelfth administrative review of the antidumping duty order covering certain frozen warmwater shrimp from the Socialist Republic of Vietnam.]

Dated: April 14, 2021

Matthew R. Nicely and Daniel M. Witkowski, Akin, Gump, Strauss, Hauer & Feld LLP, of Washington, DC, for plaintiffs

Ethan P. Davis and Brian M. Boynton, Acting Assistant Attorneys General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. Also on the brief was Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, and Kara M. Westercamp, Trial Attorney. Of counsel was Kirrin Hough, Staff Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

Nathaniel Maandig Rickard and Zachary J. Walker, Picard, Kentz & Rowe LLP, of Washington, DC, for defendant-intervenor.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") second remand redetermination in the twelfth administrative review of the antidumping duty ("ADD") order covering certain frozen warmwater shrimp from the Socialist Republic of Vietnam ("Vietnam") filed pursuant to the court's order in Sao Ta Foods Joint Stock Co. v. United States, 44 CIT __, 475 F. Supp. 3d 1283 (2020) ("Sao Ta II"). See also Final Results of Redetermination Pursuant to Ct. Order in [Sao Ta II], Dec. 8, 2020, ECF No. 100-1 ("Second Remand Results"). In Sao Ta II, the court remanded for further consideration Commerce's remand redetermination to continue to deny separate rate status to two factory names of Thuan Phuoc Seafoods and Trading Corporation ("Thuan Phuoc"), "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory." See Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1293. In the Second Remand Results, Commerce grants the two factories separate rate status as trade names of Thuan Phuoc, under respectful protest and limited to the twelfth administrative review. See Second Remand Results at 2. Plaintiff agrees with Commerce's final decision. See Pl.'s Reply to Cmts. on Second Remand Redetermination Pursuant to Ct. Remand Order at 1, Feb. 12, 2021, ECF No. 106 ("Pl.'s Br.").

## BACKGROUND

The court assumes familiarity with the facts of this case, as set out in its previous opinions ordering remand, see Sao Ta Foods Joint Stock Co. v. United

Consol. Court No. 18-00205 Page 3

States, 44 CIT __, __, 425 F. Supp. 3d 1314, 1319–20 (2020) ("Sao Ta I"); Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1286, and recounts those facts relevant to the court's review of the Second Remand Results. In this twelfth administrative review of the ADD order covering certain frozen warmwater shrimp from Vietnam, Commerce denied separate rate status to two factory names of Thuan Phuoc, "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory," because neither factory name was listed on its respective valid business registration certificate.[1] See Decision Memo. for Prelim. Results of [ADD] Admin. Review at 9–10, A-552-802, PD 224, bar code 3679553-02 (Mar. 5, 2018); Names Not Granted Separate Rate Status at the Prelim. Results at 4, PD 225, bar code 3679580-01 (Mar. 5, 2018) ("Trade Names Memo.");[2] Certain Frozen Warmwater Shrimp from [Vietnam]: Issues and Decisions Memo. for the Final Results at 19–20, A-552-802, PD 292, bar code 3752460-01 (Sept. 7, 2018) ("Final Decision Memo.").

In Sao Ta I, the court held Commerce's determination that Thuan Phuoc's factories did not qualify for separate rate status was unsupported by substantial

---

[1] The factory names were identified on sales documents. See Trade Names Memo. at 4.

[2] On November 13, 2018, Defendant filed indices to the public and confidential administrative records underlying Commerce's final determination on the docket at ECF Nos. 19-2–3. Subsequently, on May 13, 2020, Defendant filed indices to the administrative record underlying Commerce's remand redetermination on the docket at ECF No. 75, and on December 22, 2020, Defendant filed indices to the administrative record underlying Commerce's second remand redetermination at ECF No. 101. Citations to the administrative record in this opinion are to the numbers Commerce assigned to such documents in the indices, and preceded by "PD" or "CD" to denote the public or confidential documents.

evidence, because Commerce failed to consider the documentary evidence included with Thuan Phuoc's separate rate certification, i.e., copies of the factories' business registration certificates and invoices, and explain why, in view of that evidence, the factory names did not qualify as trade names of Thuan Phuoc. See Sao Ta I, 44 CIT at \_\_, 425 F. Supp. 3d at 1329–31. On remand, Commerce continued to find that neither factory qualifies for a separate rate because the factories are independent exporters and not trade names of Thuan Phuoc. See Final Results of Redetermination Pursuant to Ct. Order in [Sao Ta I] at 6–12, 17–21, Apr. 30, 2020, ECF No. 74 ("Remand Results").

In Sao Ta II, the court found that Commerce's denial of separate rate status to "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory" was unreasonable because Commerce failed to explain how it distinguishes when an entity is a "separate exporter[]" as opposed to a trade name of another company, and failed to address record evidence that detracts from its position that the factories are ineligible for a separate rate. Sao Ta II, 44 CIT at \_\_, 475 F. Supp. 3d at 1289–90, 1291–93. Moreover, although Commerce claimed that its practice with respect to trade names and separate rates had recently changed, the court held that Commerce's change in practice regarding trade names was arbitrary and capricious because, apart from it being unclear whether a change actually occurred, Commerce did not give reasonable notice to interested parties of the change. See id. at 1290–91. In its Second Remand Results, Commerce grants, under respectful protest, separate

Consol. Court No. 18-00205 Page 5

rate status to "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory" as trade names of Thuan Phuoc.  See Second Remand Results at 2.  Plaintiff concurs in the result.  See Pl.'s Br. at 1.  Defendant-Intervenor, Ad Hoc Shrimp Trade Action Committee, argues that the Second Remand Results should be remanded for further consideration, because Commerce adequately explains why it did not grant separate rate status to the two factories.  See Def.-Intervenor Ad Hoc Shrimp Trade Action Committee's Cmts. on the [Second Remand Results], Jan. 7, 2021, ECF No. 102.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012)[3] and 28 U.S.C. § 1581(c) (2012),[4] which grant the court authority to review actions contesting the final determination in an administrative review of an ADD order.  The court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture (Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting Nakornthai

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

[4] Further citations to Title 28 of the U.S. Code are to the 2012 edition.

Strip Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F. Supp. 2d 1303, 1306 (2008)).

## DISCUSSION

Plaintiff challenged Commerce's decision not to grant separate rate status to Thuan Phuoc's factories, "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory," despite granting separate rate status to Thuan Phuoc. See Compl. at ¶ 24, Oct. 2, 2018, ECF No. 7. The court remanded to Commerce to reconsider the separate rate status of the two factories, because Commerce failed to consider evidence that detracted from its determination in light of its stated practice. See Sao Ta I, 44 CIT at __, 425 F. Supp. 3d at 1329–30. Commerce, in its remand redetermination, again denied separate rate status to the two factories based on its view that each entity acts as an independent exporter. See generally Remand Results. The court remanded a second time for reconsideration. See Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1293. Commerce, under respectful protest, grants separate rate status to "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory" as trade names of Thuan Phuoc, see Second Remand Results at 2, and Plaintiff agrees with Commerce's final determination. See Pl.'s Br. at 1.

When Commerce investigates subject merchandise from a non-market economy ("NME") country, such as Vietnam, Commerce presumes that the government controls the export-related decision-making of all companies operating within that NME. See Import Admin., [Commerce], Separate-Rates Practice and

Application of Combination Rates in Antidumping Investigations involving [NME] Countries, Pol'y Bulletin 05.1 at 1 (Apr. 5, 2005) ("Policy Bulletin 05.1"), available at http://enforcement.trade.gov/policy/bull05-1.pdf (last visited Apr. 8, 2021); see also Antidumping Methodologies in Proceedings Involving [NME] Countries: Surrogate Country Selection and Separate Rates, 72 Fed. Reg. 13,246, 13,247 (Dep't Commerce Mar. 21, 2007) (request for comment) (stating the Department's policy of presuming control for companies operating within NME countries); Sigma Corp. v. United States, 117 F.3d 1401, 1405 (Fed. Cir. 1997) (approving Commerce's use of the presumption). Commerce assigns an NME-wide rate, unless a company successfully demonstrates an absence of government control, both in law (de jure) and in fact (de facto)). See Policy Bulletin 05.1 at 1–2.[5]

---

[5] Commerce examines the following factors to evaluate de facto control: "whether the export prices are set by, or subject to the approval of, a governmental authority;" "whether the respondent has authority to negotiate and sign contracts and other agreements;" "whether the respondent has autonomy from the central, provincial and local governments in making decisions regarding the selection of its management;" and, "whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses." Policy Bulletin 05.1 at 2. With respect to de jure control, Commerce considers three factors: "an absence of restrictive stipulations associated with an individual exporter's business and export licenses;" "any legislative enactments decentralizing control of companies;" and, "any other formal measures by the government decentralizing control of companies." Id.

To establish independence from governmental control, a company submits a separate rate application or a separate rate certification.[6] See Policy Bulletin 05.1 at 3–4; see also Pls.' Confidential Memo. Supp. R. 56.2 Mot. J. Agency R. at Annex 2 ("Separate Rate Application"), Annex 3 ("Separate Rate Certification"), Mar. 15, 2019, ECF No. 29. Under Commerce's separate rate policy, recounted in Policy Bulletin 05.1 each company that exports subject merchandise to the United States must submit its own individual separate rate application, "regardless of any common ownership or affiliation between firms[.]" Policy Bulletin 05.1 at 5. Commerce limits its consideration to only companies that exported subject merchandise to the United States during the period of investigation or review.[7] See id. at 4–5. In addition, applicants must identify affiliates in the NME that exported to the United States during the period of investigation or review and provide documentation demonstrating that the same name in its separate rate request appears both on the business registration certificate and on shipments declared to U.S. Customs and Border Protection ("CBP"). See id. at 4–5. The separate rate forms reflect these

---

[6] Firms that currently hold a separate rate submit a separate rate certification, while firms that do not hold a separate rate or have had changes to corporate structure, ownership, or official company name submit a separate rate application. See Separate Rate Application at 2. Both forms request similar information. Relevant here, in a separate rate certification, like a separate rate application, an applicant provides information and supporting documentation that it is not subject to NME control. See, e.g., Final Decision Memo. at 19.

[7] Although Policy Bulletin 05.1 refers to investigations, the separate rate application and separate rate certification, which apply to investigations and reviews, incorporate Policy Bulletin 05.1 by reference. See, e.g., Separate Rate Application at 2.

requirements.  Question two of the separate rate application, like question seven of the separate rate certification, asks whether the applicant "is identified by any other names . . . (i.e., does the company use trade names)" and requests applicants to provide business registration certificates and "evidence that these names were used during the [period of investigation or review]."  See Separate Rate Application at 10; see also Separate Rate Certification at 7.  The separate rate application and separate rate certification instructions define a "trade name" as a "name[] under which the company does business."  Separate Rate Application at 10 n.3; Separate Rate Certification at 7 n.3.

Commerce, under respectful protest, granted separate rate status to "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory" as trade names of Thuan Phuoc.  See Second Remand Results at 2.  Commerce's decision is supported by substantial evidence because it is consistent with Commerce's practice under the statute to grant separate rate status to so long as the same name in the company's separate rate request appears both on the business registration certificate and on commercial shipments.  See Policy Bulletin 05.1 at 4–5.[8]  As discussed in Sao Ta I,

---

[8] Commerce's Policy Bulletin provides "[a]ll applicants must identify in the application any affiliates in the NME country that exported to the United States during the period of investigation the merchandise described in the petition, as well as any affiliates located in the United States involved in the sale of the subject merchandise[]" and "[a]ll shipments to the United States declared to U.S. Customs and Border Protection must identify the exporter by its legal business name. This

(footnote continued)

Consol. Court No. 18-00205                                                                                         Page 10

Thuan Phuoc established its eligibility for a separate rate, see Remand Results at 6, and, in its separate rate certifications, also requested that its factories' names, "Frozen Seafoods Factory No. 32" and "Seafoods and Foodstuffs Factory," be granted separate rate status. See Separate Rate Certification of [Thuan Phuoc], PD 71, bar code 3572148-01 (May 15, 2017) ("Thuan Phuoc Separate Rate Certification"). Specifically, in its separate rate certification, Thuan Phuoc indicated the factories were under common ownership, identified them as trade names of Thuan Phuoc, and provided business registration certificates and export documentation. See id. at 1–8. As the court noted in its prior opinions, if the two factory names are names under which Thuan Phuoc does business, "then Commerce's finding that Thuan Phuoc operates independently of the government in its export activities would extend to these factories and their trade names" according to Commerce's policy. See Sao Ta I, 44 CIT at __, 425 F. Supp. 3d at 1329; Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1289.

      Commerce's policy as well as the instructions to the separate rate application and separate rate certification focus on whether a firm's export activities are

---

name must match the name that appears on the exporter's business license/registration documents, a copy of which shall be provided to the Department as part of the exporter's request for separate rate status." See Policy Bulletin 05.1 at 4–5. As will be discussed further, Thuan Phuoc provided documentation to demonstrate that the substantive requirements set out in Commerce's policy were met for the two factories, see Separate Rate Certification of [Thuan Phuoc], PD 71, bar code 3572148-01 (May 15, 2017), but Commerce failed to address this evidence and instead evaluated the factories separate rate status on other grounds that are not part of its policy.

sufficiently independent from the NME to qualify for a separate rate and recognize that a company may do business under one or more names. See Policy Bulletin 05.1 at 1–2; Separate Rate Application at 10 n.3; Separate Rate Certification at 7 n.3. As a result, Commerce's policy, reflected in the separate rate application and separate rate certification instructions, affords separate rate status to those trade names so long as the same name in the company's separate rate request appears both on the business registration certificate and on commercial shipments. See Separate Rate Application at 10 n.3; Separate Rate Certification at 7 n.3; see also Policy Bulletin 05.1 at 4–5. Although, in the narrative portion of the separate rate certification, Thuan Phuoc did not call the factories' names "trade names" or d/b/a names—instead referring to them as "separate factories" or "branch factories"—it checked off the form's boxes indicating that it sought separate rate status for these factory names through the conduit of "trade names." See generally Thuan Phuoc Separate Rate Certification. Thuan Phuoc also entitled one table column with "trade names," and listed the factory names within that category, in its response to question eight of the separate rate certification. See id. at 6–7. Finally, Commerce's decision is in compliance with the remand order which required that Commerce either reconsider, or further explain, its decision and supposed change in policy.

Although Commerce now reconsiders its position, and grants the two factories separate rate status, it does so under protest and continues to argue that separate rate status is inappropriate, repeating the same reasons given in its Remand Results.

See Remand Results; Second Remand Results. Commerce reiterates its position that the two companies should have filed the separate rate application because they did not have a SR from the previous review. See Second Remand Results at 8–10. Commerce also restates its position that it has no basis to determine that the two factories, which are producers and exporters, are the same company as Thuan Phuoc and are just doing business as another name. See id. at n.48. However, in Sao Ta II, the court questioned how Commerce came to the conclusion that the two factories were "separate exporters."[9] See Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1289. Relatedly, the court instructed Commerce to explain how it defines a company as an independent exporter versus a trade name. See id. at 1290. The court further ordered Commerce to substantiate its allegation that it changed its practice, and explain

---

[9] Specifically, the court stated

> Here, however, rather than determining whether the asserted trade names 'identify the exporter by its legal business name' and whether they 'match the name that appears on the exporter's business license/registration documents[,]' see Policy Bulletin 05.1 at 4–5; Separate Rate Application at 10 n.3; Separate Rate Certification at 7 n.3, Commerce relies on the commercial business registration certificates and commercial documentation to assert the factory names are 'separate exporters' that must, themselves, apply for a separate rate. See Remand Results at 7–12, 24–25. Commerce, in characterizing the factories as 'separate exporters,' offers no definition for that term nor identifies where in the statute or regulations it bases the distinction it seeks to capture with this term. It may be that Commerce can point to both authority and rationale to support the distinction but the court will not speculate on its behalf. Commerce should state its position and explain why its approach is reasonable and how it squares with its policy as well as the separate rate application and separate rate certification instructions. Cf. Policy Bulletin 05.1 at 4–5; Separate Rate Application at 10 n.3; Separate Rate Certification at 7 n.3.

whether if it changed its practice, it gave "adequate explanation or notice" of the change. See id. at 1290. Finally, the court ordered Commerce to explain how it evaluated evidence that detracted from its determination. See id. at 1291. Commerce did not respond with any of the requested explanations. Instead, Commerce restates its position that it changed its practice in the tenth administrative review to deny SR status to any exporters that were separate companies or branches, and that the parties were on notice of the changes. See Second Remand Results at 12–13.[10] Commerce fails to explain how its position, i.e., that every entity is its own exporter coheres with the policy and practice reflected in its separate rate instructions. Question two of the separate rate application, like question seven of the separate rate certification, asks whether the applicant "is identified by any other names . . . (i.e., does the company use trade names)" and requests applicants to provide business registration certificates and "evidence that these names were used during the [period of investigation or review]." See Separate Rate Application at 10; see also Separate Rate Certification at 7. The separate rate application and separate rate certification instructions define a "trade name" as a "name[] under which the company does business." Separate Rate Application at 10 n.3; Separate Rate Certification at 7 n.3.

---

[10] Commerce states that it is under no obligation to independently investigate the affiliation between exporters. See Second Remand Results at 9–10. However, the court did not ask Commerce to investigate the affiliation between exporters, rather it asked Commerce to explain why it denied separate rate status to two of Thuan Phuoc's factories despite evidence that the factories were eligible for separate rate status. See Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1289–90, 1291–93.

Consol. Court No. 18-00205                                                                                              Page 14

The instructions therefore envision that there are times when a company may export under a trade name, i.e., a name other than the name of its separate rate application or separate rate certification.  Despite its protestations, Commerce fails to support its contention that it changed its practice of allowing trade names on separate rate applications or separate rate certification, or that parties were on notice of that fact.[11]

---

[11] As discussed more fully in Sao Ta II, it is not clear that Commerce changed its practice or gave adequate notice of a change in practice to the parties.  See Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1290–91.  Commerce explains that it previously misapplied its practice when it granted separate rate status to these very factories in prior reviews.  See Remand Results at 12, 29–30.  Commerce then invokes the tenth administrative review, in which it denied separate rate status to Thuan Phuoc's trade names, as providing notice of its practice.  In that review it states a hypothetical: "[I]f Thuan Phuoc included these names as trade names but these names are, in fact separate companies or 'branches,' they are equally ineligible for separate rate status[.]"  See id. at 30 n.102, 33 n.107 (citing Certain Frozen Warmwater Shrimp from [Vietnam]: Issues and Decision Memo. for the Final Results at 80, A-552-802, (Sept. 6, 2016), available at https://enforcement.trade.gov/frn/summary/vietnam/2016-21882-1.pdf (last visited Apr. 8, 2021).  The court thus stated

> It is unclear how Commerce's caution regarding separate companies or branches provides any insight to its finding, here, that the branch factories are separate exporters. It may be that Commerce now views a distinctly named factory as a distinct company that is, as a consequence, its own exporter.  However, that view is not discernible from Commerce's statement.  Fairness demands that Commerce provide adequate notice, and it cannot be reasonably said that a statement, framed as a hypothetical, conveys a change in practice or a reason for that change.

Sao Ta II, 44 CIT at __, 475 F. Supp. 3d at 1291 (citing Shikoku Chemicals Corp. v. United States, 16 CIT 382, 388, 795 F. Supp. 417, 421–22 (1992); Huvis Corp. v. United States, 31 CIT 1803, 1811, 525 F. Supp. 2d 1370, 1378 (2007)).

Consol. Court No. 18-00205					Page 15

## CONCLUSION

For the foregoing reasons, Commerce's <u>Second Remand Results</u> are supported by substantial evidence and comply with the court's order in <u>Sao Ta II</u>, and are therefore sustained. Judgment will enter accordingly.

<u>/s/ Claire R. Kelly</u><br>
Claire R. Kelly, Judge

Dated:     April 14, 2021
           New York, New York